# EXHIBIT A

# COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss

TRIAL COURT
SUPERIOR COURT DEPARTMENT
CIVIL ACTION NO.
12-4341

NOV 30 2012

Deborah A. Dawson,
    Plaintiff,

v.

Portfolio Recovery Associates, LLC,
    Defendant.

COMPLAINT AND JURY TRIAL DEMAND

## I. INTRODUCTION

Deborah A. "Debbie" Dawson is a disabled person who suffers from severe persistent anxiety, panic attacks, depression, agoraphobia, and chronic obstructive pulmonary disease. Even minor stressors, such as deadlines or difficult conversations, can cause her to experience blackout sensations, a racing heartbeat, and an overwhelming feeling of being suffocated. Because of her crippling disability, Ms. Dawson cannot work. She has less than $10 in savings. Her disability is so obvious that it becomes immediately apparent to those who speak on the phone with her.

Portfolio Recovery Associates, LLC, ("Portfolio") is a multinational corporation with thousands of employees. It is a debt collector. For a prolonged period, Portfolio hounded Ms. Dawson with constant phone calls, demanding payment on a debt she did not owe. When Ms. Dawson told Portfolio that she had previously paid the debt in full, Portfolio did not relent. Instead, it continued to call her multiple times per day, speaking to her abusively and rudely as it made its totally meritless demands for payment. It did so despite the fact that Ms. Dawson's

disabilities are so obvious that Portfolio knew or should have known that its actions would cause Ms. Dawson unbearable suffering. Portfolio also sent her mailings demanding payment of a variety of sums.

Portfolio's payment demands exacerbated Ms. Dawson's anxiety disorder and caused her physical pain. Portfolio's demands also triggered pathologically severe panic symptoms: she felt her breath being pressed from her lungs by an unseen force; her vision began to go dark; she perceived the walls leaning in on her; she gasped desperately for air. Overcome by these symptoms, Ms. Dawson could only lie prostrate and wait for her suffering to abate.

## II. PARTIES

1. Plaintiff Deborah A. "Debbie" Dawson is a resident of Massachusetts living at 110 Alden Street in Dedham since 2011, with a prior address of 11 Enfield Street in Jamaica Plain.

2. Defendant Portfolio Recovery Associates, LLC ("Portfolio") is, upon information and belief, a Delaware Corporation with a principal place of business at 120 Corporate Boulevard, Norfolk, VA 23502.

3. Portfolio has a Massachusetts office located at 49 Winter Street, Weymouth, MA 02188.

4. Portfolio is a "debt collector" within the meaning of the federal Fair Debt Collection Practices Act ("FDCPA").

## III. JURISDICTION

5. Defendant Portfolio regularly solicits and transacts business in the Commonwealth through the collection of debts and has committed a tortious injury in the Commonwealth. Accordingly, this Court has personal jurisdiction over the Defendant pursuant to M.G.L. c. 223A, § 3.

6. Venue is proper in this Court pursuant to M.G.L. c. 223 § 8(4) in that Portfolio may sue or

be sued in Suffolk County.

## IV. STATEMENT OF FACTS

7. Deborah A. "Debbie" Dawson is a disabled person and mother of one. She suffers from generalized persistent anxiety, depression, agoraphobia, mental confusion, and panic attacks. Her panic attacks bring on extreme difficulty in breathing, blackouts, a racing heart beat, and a crippling terror that she is about to die.

8. Ms. Dawson's disability is obvious and self-evident due to her frequent onset of panic symptoms, her audible difficulty breathing, her overwhelming feelings of anxiety and sadness which often cause her to weep without apparent reason, her inability to concentrate for more than a few minutes, and her unusually frequent digressions during conversation. She also suffers physical impairments as a result of chronic obstructive pulmonary disease.

9. Because these mental and physical disabilities render Ms. Dawson unable to work, she has less than $10 total in her bank accounts.

10. On information and belief, Ms. Dawson once opened a credit card account with Cross Country Bank.

11. On information and belief, Ms. Dawson closed said account and paid off all outstanding debt owed to Cross Country Bank.

12. Even had Ms. Dawson not paid off all outstanding debt owed on that account, on information and belief, that debt would have been time-barred by the time Portfolio began its collection efforts which are the subject of this action.

13. Portfolio repeatedly contacted Ms. Dawson via post and telephone, claiming that she owed approximately $1,400.00 to "Midland Credit Management / Cross Country Bank" and demanding that Ms. Dawson pay various sums to settle this alleged debt. Upon information

and belief, Portfolio made these demands for a period of at least twelve to eighteen months, until at least April 6, 2012.

14. Portfolio incessantly harassed Ms. Dawson with phone calls demanding payment on the debt she did not owe. On information and belief, for many months, Portfolio called Ms. Dawson multiple times per day and gave her almost no respite from its meritless demands for payment during this time.

15. Portfolio continued demanding payment even after it received repeated notice that Ms. Dawson did not owe the debt. Portfolio requested Ms. Dawson's consumer report on or about September 26, 2010; upon information and belief, as a result of obtaining this report Portfolio knew or should have known that Ms. Dawson did not owe the alleged debt.

16. Furthermore, whenever Ms. Dawson spoke with Portfolio on the phone, she told Portfolio that she had paid the debt in full.

17. When Ms. Dawson told Portfolio that it was mistaken and that she had paid the debt in full, Portfolio refused to heed her dispute of the debt and instead demanded that Ms. Dawson dispute the debt in writing. Portfolio then continued its incessant collection attempts.

18. Portfolio spoke to Ms. Dawson rudely, aggressively, and abusively in its telephone demands to her.

19. Portfolio's demands via post purported to offer Ms. Dawson something of value in exchange for the demanded payments. Portfolio variously described this thing of value as, for example, "INCREDIBLE SAVINGS," "SAVINGS," and "a solution just for you."

20. Portfolio's demands via post and phone did not include disclosures that her alleged debt was time-barred.

21. Portfolio's phone calls and mailings caused Ms. Dawson to suffer physical pain and severe

emotional distress in the form of exacerbated anxiety symptoms and panic attacks.

22. As a result of Portfolio's collection demands, Ms. Dawson experienced headaches and heightened feelings of anxiety. Other times, Portfolio's payment demands caused Ms. Dawson to begin blacking out; to experience the overwhelming sensation that an unseen force was suffocating her; and to feel terror that she was about to die.

23. This physical pain and severe emotional distress that Portfolio caused rendered Ms. Dawson unable to complete the normal tasks of daily life.

24. The physical pain and severe emotional distress that Portfolio caused Ms. Dawson also compelled her to stop answering her phone when she did not know the identity of the caller, to lie down for long stretches in an attempt to calm herself, and to take medication.

25. On April 6, 2012, Ms. Dawson demanded through her attorneys, the WilmerHale Legal Services Center, that Portfolio cease all efforts to collect the so-called debt.

26. On September 9, 2012, Ms. Dawson learned of Portfolio's Account Review Inquiry with TransUnion LLC, a consumer reporting agency, which Portfolio had made on or about September 26, 2010. Upon information and belief, Portfolio was not the owner or servicer of any debt involving Ms. Dawson when it made this inquiry.

27. On October 5, 2012, Ms. Dawson, through her attorneys the WilmerHale Legal Services Center, mailed to Portfolio a demand for relief pursuant to M.G.L. c. 93A.

28. Portfolio has not made any response to Ms. Dawson's demand letter. It did not provide a written tender of settlement within thirty days of mailing the demand letter pursuant to M.G.L. c. 93A Section 9(c).

## V. CAUSES OF ACTION

### Count One

### Unfair or Deceptive Acts or Practices under M.G.L. c. 93A

29. Ms. Dawson reasserts and realleges each and every allegation set forth in the above paragraphs as if fully set forth herein.

30. The Attorney General's Regulations promulgated under the Massachusetts Consumer Protection Act provide in relevant part that "[i]t shall constitute an unfair or deceptive act or practice to engage in any of the following practices to collect or attempt to collect any debt:"

   (1) Any false representation that the creditor has . . . something of value for the debtor.

   (2) Any knowingly false or misleading representation in any communication as to the character, extent or amount of the debt, or as to its status in any legal proceeding . . .

   (8) Any false, deceptive, or misleading representation, communication, or means in connection with the collection of any debt or to obtain information concerning a debtor. . .

   (23) Requesting any information about the debtor or the debtor's accounts or assets other than information the creditor, in good faith, believes will assist in the collection of the debt owed to the creditor.

940R § 7.07.

31. The Attorney General's Regulations also provide that "[i]t shall constitute an unfair or deceptive act or practice for a creditor to fail to provide to a debtor . . . (c) A statement that unless the debtor, within 30 days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the creditor." 940 CMR § 7.08(1)(c).

32. As set forth above, Portfolio's conduct toward Ms. Dawson was unfair and deceptive in many respects, including but not limited to the following acts:

    a. Portfolio attempted to collect a debt that Ms. Dawson did not in fact owe. In its collection attempts through incessant phone calls and repeated mailings, Portfolio falsely represented to Ms. Dawson that she did still owe the debt and failed to notify her that she had no obligation to pay.

    b. Portfolio violated the notice requirement contained in 940 CMR § 7.08(1)(c). While that regulation requires debt collectors to notify consumers of their right to dispute purported debts, Portfolio demanded that Ms. Dawson dispute the debt *in writing*, thereby placing an unlawful limitation on Ms. Dawson's right to dispute the debt.

    c. Portfolio falsely offered Ms. Dawson "INCREDIBLE SAVINGS," "SAVINGS," and other things of value. Because Ms. Dawson did not owe the debt, she could win no savings by paying it. Thus Portfolio's "offer" to Ms. Dawson was a false representation that it had something of value for her.

    d. Portfolio made an inquiry into Ms. Dawson's credit on September 26, 2010. On information and belief, this was a bad faith request for information concerning Ms. Dawson's accounts or assets because Portfolio had not made reasonable efforts to verify that Ms. Dawson owed the debt. In the alternative, Ms. Dawson's credit history could not have been "information the creditor, in good faith, believes will assist in the collection of the debt owed to the creditor" because there was no "debt owed to the creditor" by Ms. Dawson. 940 CMR § 7.07(23).

    e. In attempting to collect an alleged debt, Portfolio violated the following statutes as described in further counts of this Complaint: the Fair Debt Collection Practices Act

7

(15 U.S.C. §§ 1692e, 1692f); the Fair Credit Reporting Act (15 U.S.C. §§ 1681b, 1681n, 1681o); the Massachusetts credit reporting statutes (M.G.L. c. 93 §§ 51, 63-64).

33. Because of Portfolio's unlawful conduct, including incessant phone calls and repeated mailings, Ms. Dawson suffered panic attacks, headaches, bouts of extreme anxiety, and severe emotional distress.

34. Portfolio should reasonably have known that Ms. Dawson was particularly vulnerable to emotional distress because of the obviousness of her disability and anxiety symptoms.

35. Portfolio acted willfully by continuing to demand payment even after it received repeated notice that Ms. Dawson did not owe the alleged debt.

36. Ms. Dawson therefore is entitled to relief in the form of multiple damages, costs, and attorney's fees.

### Count Two

### Violations of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 et seq.

37. Ms. Dawson reasserts and realleges each and every allegation set forth in the above paragraphs as if fully set forth herein.

38. The federal Fair Debt Collection Practices Act (FDCPA) prohibits the following activities (15 U.S.C. § 1692e):

   (2)   The false representation of . . . (A) the character, amount, or legal status of any debt.

   (10)  The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

39. Furthermore the FDCPA states generally that "[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f.

8

40. The FDCPA also requires debt collectors to notify alleged debtors of their right to dispute the debt by providing "a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt . . . the debt will be assumed to be valid by the debt collector." 15 U.S.C. § 1692g(a)(3).

41. As set forth above, Portfolio violated the FDCPA in numerous ways, including but not limited to the following actions:

   a. Portfolio falsely represented the character, amount, or legal status of a debt by attempting to collect a debt that Ms. Dawson had paid in full.

   b. Portfolio violated the notice requirement contained in 15 U.S.C. § 1692g(a)(3). While that provision requires debt collectors to notify consumers of their right to dispute purported debts, Portfolio demanded that Ms. Dawson dispute the debt *in writing*, thereby placing an unlawful limitation on Ms. Dawson's right to dispute the debt.

   c. Portfolio used false representations or deceptive or unfair means to attempt to collect a debt by disguising its demands for payment as a special, time-sensitive offer which had to be taken advantage of quickly and which would redound in monetary savings to the debtor.

42. Because of Portfolio's unlawful conduct, Ms. Dawson suffered panic attacks, headaches, bouts of extreme anxiety, and severe emotional distress.

43. Ms. Dawson therefore is entitled to relief in the form of damages, costs, and attorney's fees.

### Count Three

### Violations of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681 et seq.

44. Ms. Dawson reasserts and realleges each and every allegation set forth in the above paragraphs as if fully set forth herein.

45. Under the Fair Credit Reporting Act (FRCA), a consumer reporting agency "may furnish a consumer report under [specified] circumstances *and no other*." 15 U.S.C. § 1681b (emphasis added). The statute imposes civil liability on persons who either provide or use consumer reports for impermissible purposes. 15 U.S.C. §§ 1681n (willful noncompliance), 1681o (negligent noncompliance).

46. Portfolio willfully or negligently used a consumer report for an impermissible purpose by:

 a. Requesting and obtaining a consumer report on Ms. Dawson from, at least, one consumer reporting agency, TransUnion LLC, on or about September 26, 2010, when Portfolio knew or should have known it was not the owner or servicer of any debt owed by Ms. Dawson.

47. Therefore Ms. Dawson is entitled to recover damages, costs, and attorney's fees.

### Count Four

### Violations of the Massachusetts Credit Reporting Statutes, M.G.L. c. 93 §§ 51, 63-64

48. Ms. Dawson reasserts and realleges each and every allegation set forth in the above paragraphs as if fully set forth herein.

49. Under the Massachusetts credit reporting statutes, a consumer reporting agency "may furnish a consumer report under [specified] circumstances *and no other*." M.G.L. c. 93 § 51 (emphasis added). The statute imposes civil liability on persons who either provide or use credit reports for impermissible purposes. M.G.L. c. 93 §§ 63 (willful noncompliance),

64 (negligent noncompliance).

50. Portfolio willfully or negligently used a consumer report for an impermissible purpose by:

   a. Requesting and obtaining a consumer report on Ms. Dawson from, at least, one consumer reporting agency, TransUnion LLC, on or about September 26, 2010, when Portfolio knew or should have known it was not the owner or servicer of any debt owed by Ms. Dawson.

51. Therefore Ms. Dawson is entitled to recover damages, costs, and attorney's fees.

## Count Five

## Intentional or Negligent Infliction of Emotional Distress

52. Ms. Dawson reasserts and realleges each and every allegation set forth in the above paragraphs as if fully set forth herein.

53. As set forth above, Portfolio is liable to Plaintiff for intentional infliction of emotional distress because of the following actions:

   a. Portfolio incessantly demanded that Ms. Dawson pay a debt she did not owe.

   b. Portfolio persisted in this activity despite Ms. Dawson's protestations that she did not owe the debt and despite the fact that Portfolio's own request for Ms. Dawson's consumer credit report on or about September 26, 2010, should have given Portfolio notice that Ms. Dawson did not owe the debt.

   c. Portfolio either knew the alleged debt was not collectable or willfully failed to examine whether the debt was collectable, yet still continued to harass Ms. Dawson.

   d. Portfolio either knew or reasonably should have known that Ms. Dawson was disabled and especially vulnerable to suffering emotional distress as a result of such harassment.

  e. Portfolio relentlessly made collection demands via phone and in these demands spoke to Ms. Dawson in an abusive and rude manner.

  f. Portfolio's actions caused Ms. Dawson to suffer panic attacks including blackout symptoms, a racing heartbeat, chest pain, and the sensation of being suffocated; headaches; bouts of extreme anxiety; and severe emotional distress.

54. Aggressively attempting to collect a debt from an obviously vulnerable person while displaying a total disregard for the validity of the alleged debt, for the medical and psychiatric condition of the alleged debtor, and for basic civility constitutes extreme and outrageous conduct that is beyond all possible norms of decency and is utterly intolerable in a civilized community.

55. Therefore Portfolio intentionally or recklessly inflicted emotional distress on Ms. Dawson.

56. In the alternative, Portfolio negligently inflicted emotional distress on Ms. Dawson.

57. Ms. Dawson therefore is entitled to recover actual and punitive damages.

**PLAINTIFF DEMANDS TRIAL BY JURY ON ALL CLAIMS SO TRIABLE.**

Wherefore, Plaintiff requests that the Court, after Trial by Jury, enter and adjudge as follows:

(i) determine that Portfolio is liable to Plaintiff upon Plaintiff's claims, and award actual, consequential, statutory, multiple, and punitive damages as determined by the jury or as the Court may deem appropriate;

(ii) award expert fees, costs, and attorney's fees; and

(iii) grant such other and further relief as merited in the interests of justice.

Respectfully submitted,

Deborah Dawson

By Her Attorney,

_____
Max Weinstein, BBO #600982
Legal Services Center
122 Boylston Street
Jamaica Plain, MA 02130
Tel: (617) 390-2690
Fax: (617) 522-0715
mmweinstein@law.harvard.edu

Date: November 28, 2012

On the Complaint:
Elizabeth Graber, Rule 3:03 counsel
Michael Schorsch, Rule 3:03 counsel